# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| VALLAMBROSA PLANTATION, LLC, JERRY WILLIAMS, and TAMMY LEE WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID SIKORSKY and MARY SIKORSKY,<br><br>Defendants. | Case No. CV415-202 |

# **ORDER**

Recently indicted in Chatham County Superior Court on charges related to the same conduct at issue in this federal RICO case, defendant David Sikorsky moves to stay these civil proceedings until the completion of that prosecution. Doc. 19. Plaintiffs oppose "await[ing] justice" any longer and want the motion denied. Doc. 26. District courts unquestionably have "the power to stay a civil proceeding due to an active, parallel criminal investigation." *United States v. Pinnacle Quest Int'l*, 2008 WL 4274498 at * 1 (N.D. Fla. Sept. 11, 2008). But the exercise of that power is guided by discretion, which itself travels on -- as will be seen -- some subtle distinctions.

## I. BACKGROUND

For many years, Sikorsky and his family used an 8,200 acre tract (Vallambrosa Plantation) near his house for recreational purposes. Doc. 19 at 1. Plaintiffs recently acquired that tract and installed fencing, no trespassing signs, and locks on gates that previously remained open. *Id.* Sikorsky, by his own admission,[1] proceeded to put super glue in the locks, rip down some of the signs, and cut the fence over a period of six months. *Id.* at 2.

Plaintiffs sued the Sikorskys on June 12, 2015, alleging various tort claims under state law and a federal RICO claim. *See* doc. 1-1 (timely removed to this Court on July 13, 2015). A little more than two months later, a state grand jury indicted Sikorsky for four felonies: criminal damage to property greater than $500, theft by taking, and two counts of possession of tools for the commission of a crime. *See* doc. 27-1 at 1.[2] He was also indicted on eight counts of criminal trespass. *Id.*

---

[1] Sikorsky admitted to the trespassing and damage to plaintiffs' property both to the police and this Court. *See* doc. 19 at 2.

[2] The grand jury originally indicted Sikorsky on August 5, 2015, *see* doc. 19-1, but later returned a superseding indictment on August 19, 2015 that added the possession of tools charges. Doc. 27-1 at 1.

2

## II. ANALYSIS

Both parties agree that Sikorsky's admissions makes damages the primary issue here. And to be guilty of criminal damage to property, the damages must exceed $500. Sikorsky contends the significant overlap of damages-related issues merits a stay to allow the criminal proceeding to conclude. Doc. 19 at 6-7. If the two cases proceed simultaneously, he says, protecting his Fifth Amendment rights will cripple his ability to contest damages in this case. *Id.* Precisely because this case "is one concerning damages, not liability," plaintiffs argue it "does not so directly implicate the Fifth Amendment" as to warrant a stay. Doc. 26 at 3.

Plaintiffs' argument is facially attractive but fatally flawed. Sikorsky's liability admission indeed presents an atypical situation.[3] But Fifth Amendment implications remain because "the issue of damages in the civil case goes directly to the monetary thresholds alleged in the Indictment that elevated Mr. Sikorsky's conduct to felonies." Doc. 27 at

---

[3] *Cf., United States v. Lot 5, Fox Grove, Alachua Cnty., Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (defendant never conceded civil forfeiture liability, but invoked right to remain silent); *Coquina Invs. v. Rothstein*, 2011 WL 2530945 at *1 (S.D. Fla. June 24, 2011) (defendant invoked Fifth Amendment, never conceded liability); *Lay v. Hixon*, 2009 WL 1357384 at * 2 (S.D. Ala. May 12, 2009) (same); *Pinnacle Quest International*, 2008 WL 4274498 at * 1 (same).

3

3. Put differently, his guilt or innocence of criminal charges depends not only on his conduct, which he's admitted to, but also on whether that conduct caused more than $500 in damage, which he disputes. *See Clement v. State*, 324 Ga. App. 39, 43 (2013) ("To sustain a conviction for criminal damage to property in the second degree, the State must present competent evidence showing that the defendant intentionally caused in excess of $500 in damage to the property of another person without his or her consent."). Testimony in this case (including discovery request responses), where the primary issue is damages, could therefore be used to establish his guilt in the criminal proceedings (at least for the criminal damage to property count).[4] Incriminating testimony like that, if compelled, is the Fifth Amendment's heartland, *see In re Grand Jury Proceedings, No. 4-10*, 707 F.3d 1262, 1268 (11th Cir. 2013) ("[T]he Fifth Amendment protects [a] person . . . from compelled self-incrimination."), and nothing about admitting to liability

---

[4] Interrogatory No. 4, for example, requests that Sikorsky "[n]arrate fully and with great detail in [his] words how the damages complained of by Plaintiff occurred and the facts and circumstances surrounding said damages. Also fully describe all conversations that have taken place regarding the damages complained of and *why you believe the damages claimed by the Plaintiff should not be awarded.*" Doc. 27-2 at 3 (emphasis added). An answer to the italicized material almost certainly would relate in part to the amount of plaintiffs' damages and so could incriminate Sikorsky regarding the criminal damage charge.

4

in this case changes that since the amount of damage is an element of one of Sikorsky's criminal charges.[5]

Still, the Fifth Amendment implications of this situation do not alone decide whether the Court should grant the stay. Nor does the "mere existence of parallel criminal and civil proceedings . . . mandate entry of a stay of the latter." *Lay v. Hixon*, 2009 WL 1357384 at * 2 (S.D. Ala. May 12, 2009). "Rather, a court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.'" *United States v.*

---

[5] Plaintiffs also obliquely argue that Sikorsky waived his Fifth Amendment rights by talking to police and filing pleadings here "admitting to almost all of the alleged conduct." *See* doc. 26 at 3. True enough, but only to a point. Certainly Sikorsky waived the privilege against self-incrimination in his criminal proceeding as to his conduct. But waiver does not follow a defendant from proceeding to proceeding. *See In re Cotillion Invs., Inc.*, 343 B.R. 344, 350 (Bankr. S.D. Fla. 2006) ("It is settled by the overwhelming weight of authority that a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding."); *see also United States v. Gary*, 74 F.3d 304, 312 (1st Cir.1996) (it is "hornbook law" that a witness' waiver of his right against self-incrimination is limited to the particular proceeding in which the witness appears). And the scope of waiver is determined by the defendant and what he chooses to discuss. *See Brown v. United States*, 356 U.S. 148, 154–155 (1958) ("[T]he breadth of his waiver is determined by the scope of relevant cross-examination."); *see also id.* at 155 (a defendant "determines the area of disclosure and therefore of inquiry").

Looking only at these proceedings, Sikorsky waived his Fifth Amendment rights as to his conduct by admitting to it in various filings, *see, e.g.*, doc. 19 at 2 ("Sikorsky removed some of the 'no trespass' signs, inserted gorilla glue into the locks, and cut the wire fence over a period of 6 months. . . ."), but he's never waived the right as to damages. In fact, he's consistently asserted his disagreement with plaintiffs' claimed amount. *See id.*; doc. 5 (Sikorsky's answer, where six of eight affirmative defenses surround plaintiffs' claimed damages).

5

*Lot 5, Fox Grove, Alachua Cnty., Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (quoting *United States v. Kordel*, 397 U.S. 1, 12 & n. 27 (1970)).

Conversely, a court may deny a stay so long as invoking the privilege against self-incrimination "does not compel an adverse judgment against the claimant." *Id.* Even then, courts retain "substantial discretion to stay the civil proceedings in deference to the parallel criminal action where the interests of justice favor doing so. *Lay v. Hixon*, 2009 WL 1357384 at * 2 (S.D. Ala. May 12, 2009). That "interests of justice" inquiry in turn "should be made 'in light of the particular circumstances and competing interests involved in the case,'" *id.* (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324–25 (9th Cir. 1995) (cites omitted), including potential prejudice to the non-movant from a delayed decision, docket management considerations, and "the most important threshold issue," "'[t]he degree to which the issues in the simultaneous civil and criminal proceedings overlap.'" *Pinnacle Quest International*, 2008 WL 4274498 at * 2 (quoting *SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1326 (S.D. Ala. 2003)).

This case lands firmly within the broad bounds of the Court's discretion to grant stays. Denying the motion, and in turn forcing

Sikorsky to invoke his Fifth Amendment rights, would not "compel an adverse judgment against"[6] him here and so no stay is mandated. *Lot 5*, 23 F.3d at 364. At the same time, a stay is not foreclosed so long as the "interests of justice favor" granting one. *Lay*, 2009 WL 1357384 at * 2.

They do. First and foremost, Sikorsky's criminal proceeding and this case "share the same operative facts, arise out of the same general allegations, and involve . . . the same defendant[]." *Pinnacle Quest International*, 2008 WL 4274498 at * 2. The overlap between the two -- the "most important threshold issue," *id.* -- is substantial if not complete because Sikorsky's confession satisfies all but the monetary element of his criminal charges, while leaving damages as the primary issue here too. Both cases, in other words, will revolve almost entirely around how much damage Sikorsky caused.

---

[6] At worst, Sikorsky would lose the benefit of affirmatively contesting the plaintiffs' evidence of damages; he would not automatically lose the case on summary judgment. *See United States v. Two Parcels of Real Property Located in Russell Cnty., Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996) (no adverse inference allowed against party refusing to testify on Fifth Amendment grounds where that party "is forced to choose between waiving the privilege and losing the case on summary judgment"); *Global Aerospace, Inc. v. Platinum Jet Mgmt., LLC*, 2009 WL 2589116 at * 2 (S.D. Fla. Aug. 19, 2009) (adverse judgment that requires a stay "must be an actual adverse judgment, and not merely the loss of the defendant's most effective defense"). Plaintiffs would still bear the burden of proving their damages and Sikorsky could still fully defend the RICO and battery claims he believes "far exceed[ his] admitted conduct." Doc. 27 at 3.

Weighing the prejudice to plaintiffs from a stay against the burden going forward would impose on defendants also counsels granting Sikorsky's motion. Plaintiffs claim that they've "awaited justice since November of 2014," and "should not be asked to wait further." Doc. 26 at 3. That, however, is true of most plaintiffs, who would prefer to have cases decided in their favor as soon as possible. By contrast, Sikorsky, if this case is not stayed, must either testify and respond here and possibly harm his defense in the criminal proceeding, or invoke his Fifth Amendment rights and in doing so damage his ability to defend against plaintiffs' claims.

At bottom, then, the Court must balance plaintiffs' desire for a speedier resolution against Sikorsky's wish not to face the aforementioned Catch-22. Speedy dispute resolution is unquestionably a mandatory goal of civil litigation, *see* Fed. R. Civ. P. 1, and is something litigants should be able to rely on. But "speedy" is a relative term. It never means resolution within a set time. Speed, then, while not unimportant, can sometimes share space with other goals, like giving negligently tardy filers a second chance. *See, e.g., In re Bailey*, 411 B.R. 492, 495-96 (Bankr. S.D. Ga. 2009) ("[W]hile the opening of any default

would cause delay and therefore would be somewhat prejudicial," it is nevertheless warranted where defendants plead potentially meritorious defenses and the period of default is not unreasonably long); *see id.* at 496 (even if the reason for default, and thus delay, "is not a compelling excuse," so long as no judgment has been entered and no prejudice would be incurred, "the general policy favoring decisions based on the merits" counsels setting aside the default).

Contrast that with criminal proceedings, where, for example, very limited exceptions to the exclusionary rule exist when police violate a defendant's right to remain silent. *See, e.g., New York v. Quarles*, 467 U.S. 649, 656 (1984) ("[W]e do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety."). When faced with values like expediency, which have some give in the civil context, and constitutional rights of criminal procedure, which are much less flexible, the former should accommodate the latter if possible. Particularly since a temporary restraining order (doc. 12) prevents defendants from inflicting further

property damage to plaintiffs,[7] *see Pinnacle Quest International*, 2008 WL 4274498 at * 2 ("[I]n light of the injunction [barring defendants from engaging in the offending conduct], neither the parties nor the public has a special or particular interest in having the civil case decided before or contemporaneously with the criminal case."), the Court finds that Sikorsky's burden outweighs what little prejudice a stay would impose on plaintiffs.

The Court too has an interest in staying this litigation. If Sikorsky pleads guilty to (or is otherwise convicted of) causing a particular dollar amount of damage, the criminal proceeding may have some preclusive effect here. *See Matter of Raiford*, 695 F.2d 521, 523 (11th Cir. 1983) ("The use of a criminal conviction as conclusive of an issue in subsequent civil litigation . . . is well established today."); *Lay*, 2009 WL 1357384 at * 4 ("If the criminal proceeding is resolved adversely to Lay, then such an adjudication may have preclusive effect here, thereby obviating altogether the need to litigate this salvage action."). Even if preclusion is

---

[7] TROs expire (this one is set to end on October 29, 2015, *see* doc. 12) and thus so does this rationale. But both defendants say they have "no objection to extending the terms of the TRO while this case is stayed," and, in any case, that the bond conditions the state court placed on Sikorsky "are similar to the TRO restrictions agreed upon by the parties." Doc. 19 at 7. Although extending the TRO is a matter for the district judge assigned to this case, defendants' larger point is well-taken and the rationale of *Pinnacle Quest* thus continues to apply.

not available, a conviction might lead to an award of restitution, which also would influence any damages award granted plaintiffs in this case. "Rather than devoting scarce judicial resources to a[n] . . . action that may (or may not) be mooted . . . by parallel criminal proceedings in state court, a far more sensible approach would be to stay this action to allow the criminal case to reach a resolution." *Lay*, 2009 WL 1357384 at * 4.

The "particular circumstances" here -- the substantial overlap of issues in Sikorsky's two cases, slight prejudice to plaintiffs from a stay, and the court's interest in avoiding resource expenditures on litigation that may be moot -- counsel that the "interests of justice" favor a stay. *Lay*, 2009 WL 1357384 at * 2.

## III. CONCLUSION

Accordingly, the Court **GRANTS** defendants' motion to stay (doc. 19). The case will remain stayed until the conclusion of Sikorsky's criminal proceedings.[8] The burden to notify both plaintiffs and the Court of that case's conclusion lies with Sikorsky.

---

[8] The Court is not oblivious to the fact that state criminal proceedings can, on occasion, take a while to resolve. Whether that occurs here remains to be seen. If it does, however, the stay's prejudice to plaintiffs will grow. Plaintiffs, of course, will remain free to move the Court to lift the stay if the circumstances justifying its issuance change.

**SO ORDERED**, this 21st day of September, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA**